## FOLEY MFG. CO. OF ILLINOIS v. SIERRA NEVADA LUMBER CO. OF UTAH.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909.)

### No. 1,491.

SALES (§ 48*)—ILLEGALITY—CONTRACT INTENDED TO DEFRAUD THE UNITED STATES.

It is a defense to an action for breach of a contract to furnish the lumber for finishing a government building, which the purchaser had contracted to build in accordance with specifications made by the government architect, that the lumber called for was not the kind required by such specifications,

---

but a materially inferior kind, which the contractor intended to substitute, in fraud of the government, which fact the seller did not know when the contract was made.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 101–107: Dec. Dig. § 48.*]

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The action in the court below was in assumpsit by the defendant in error, a corporation of the state of Utah, against the plaintiff in error, a corporation of the state of Illinois, to recover damages by reason of the alleged failure of plaintiff in error to perform its contract to furnish the defendant in error all the finishing lumber and mill work required by it, under its contract with the United States, for the construction of the United States Post Office building at Salt Lake City.

The material portions of the contract sued upon are as follows:

"Finishing Lumber—For the United States Court House and Post Office at Salt Lake City, Utah.

"All finishing lumber including finished flooring shall be of the best quality, selected clear stock, thoroughly seasoned and kiln dried contain not more than 12% moisture at the time of setting in place, be bright and uniform in color, free from knots, shakes, sap or other defects.

"The finish in the basement, lookouts, Post Office working-room and money order and registry work rooms shall be Oregon fir, and elsewhere throughout the entire building, of red oak, all oak, and fir finish to be quarter sawed. The sides, bottom and back of drawers and cupboard shelves shall be of clear poplar.

"All the finishing lumber and millwork as called for in these specifications, including two set of revolving doors, we agree to furnish and deliver to the Sierra Nevada Lbr. Co. f. o. b. Chicago, freight allowed to Salt Lake City, Utah, for the sum of thirteen thousand seven hundred dollars ($13,700.00), except the 1x3 V fir wainscoting also except all flooring, the lookout frames outside window frames and sash and doors in vent shaft that are to be covered with tin.

"All the material to be manufactured and fitted together in the most practicable manner at the shop and shipped in as large sections as possible. Trim for doors and windows not put together but mitred."

The "specifications" referred to are the specifications prepared by the Supervising Architect of the United States government, and made the basis of a contract between the United States and the Campbell Building Company (defendant in error being the sub-contractor of the Campbell Building Company) according to which said Post Office building was to be constructed.

The issue in this case arises out of the fact that whereas the oak specified in the government's specification, for the finishing of the entire building except the basement, lookouts, post office work room, money order and registry work rooms, was to be of white oak, quarter sawed, the contract between plaintiff in error and defendant in error stipulated that such oak should be red oak.

The defense was by plea of the general issue; and by special plea, that defendant in error, through its authorized representative, before and at the time of the signing of the contract, and for the purpose of inducing plaintiff in error to sign the same, represented that the above mentioned finishing work of the entire building, with the exceptions above stated, was required by the government to be of red oak; that such statement was false and fraudulent, and known to defendant in error to be false and fraudulent when made; that plaintiff in error, in signing the contract, relied on the truth of such statements; but that subsequently plaintiff in error discovered that what was required by the United States government in its specifications for the finishing of the building, with the exceptions as above stated, was to be of white quarter sawed oak, and that defendant was bound by its contract with the government to furnish such white quarter sawed oak.

---

The special plea further avers:

"That as soon as it was discovered that the requirements in connection with the construction of said post office building were white quarter-sawed oak, that it stopped work upon said contract and notified the plaintiff and demanded an explanation; that thereupon the representative of the plaintiff (defendant in error) said A. C. Mack, came to Chicago, and stated to the defendant that while the government required white quarter-sawed oak in connection with the construction of said post office building, it the plaintiff, had made an arrangement with the government inspector in charge of said building whose duty it was to pass upon materials furnished and to see that they complied with the contracts and requirements of the United States government, by which said government inspector would accept red oak, contrary to the requirements of said United States government.

"And the defendant avers that the plaintiff in seeking to furnish red oak in connection with the construction of said post office building was in a conspiracy to defraud the United States government; that red oak was cheaper and inferior in quality and so known to be by the plaintiff, and the plaintiff in order to enable it to foist said red oak upon said United States government in connection with the construction of said post office building, had entered into a corrupt bargain and conspiracy with representatives of the United States government by which said inferior wood, namely, red oak, would be accepted; that the defendant, upon gaining knowledge of said conspiracy, refused to participate therein and declined to proceed with said supposed contract."

On the trial, as evidence of damages, a contract was introduced between defendant in error, and the Warren Manufacturing Company to furnish (in white oak, however) the lumber undelivered by plaintiff in error, for the sum of twenty-three thousand, five hundred dollars.

At the conclusion of the evidence, a motion for a verdict in favor of plaintiff in error was denied. Motion was also submitted on the part of defendant in error to strike out all of the evidence upon the plaintiff in error's special plea, which motion was sustained, and thereupon the court instructed the jury that the measure of damages was "the difference between the contract price that the plaintiff had with the defendant and such amount as it was forced to pay (as you find from the evidence) to complete its contract had with the defendant, to carry out the contract as defendant agreed to carry it out (as has been discussed here) to make the plaintiff whole under the evidence, and under that alone"; to all of which proper exceptions were preserved, all of which are made the subject matter of assignments of error here.

The verdict was for fourteen thousand dollars, upon which judgment was entered. The further facts are stated in the opinion.

Keene H. Addington, for plaintiff in error.

Frank B. Stephens, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion.

Act Feb. 20, 1893, c. 146, 27 Stat. 468 (2 U. S. Comp. St. 1901, p. 2522), provided:

"That the Secretary of the Treasury be, and he is hereby, authorized in his discretion to obtain plans, drawings, and specifications for the erection of public buildings for the United States, authorized by Congress to be erected under the supervision and direction of the Secretary of the Treasury and the local supervision of the construction thereof by competition among architects, under such conditions as he may prescribe and to make payment for the services of the architect whose plan may be selected out of the appropriations for the respective buildings: Provided, that not less than five architects shall be invited by the said secretary to compete for the furnishing of such plans and specifications and the supervision of such construction; and

provided further, that the general supervision of the work shall continue in the office of the Supervising Architect of the Treasury Department, the Supervising Architect to be the representative of the Government in all matters connected with the erection and completion of such buildings, the receipt of proposals, the award of contracts therefor, and the disbursement of moneys thereunder, and perform all the duties that now pertain to his office, except the preparation of drawings and specifications for such buildings and the local supervision of the construction thereof, the said drawings and specifications, however, to be subject at all times to modification and change relating to plan or arrangement of building and selection of material therefor as may be directed by the Secretary of the Treasury."

No question is made but that between white oak and red oak, as material for the finishing of a building such as the post office at Salt Lake City, there is a very substantial distinction; and no pretense is made that any substitution of red oak for white oak was ever submitted to, or ever approved by, any officer of the government above the local inspector. The sole attempt, at argument, to justify this departure from the specifications is that red oak "is as good" as white oak, and that subsequently, to the extent of one-half of the finishing provided, red oak went into the building without objection from the inspector.

The government of the United States can act only through its lawfully empowered officials. The power of such officials is to be found only in the laws of the United States, or such rules and regulations of the department and other superior officers, as are in pursuance of power conferred by law. And until it is shown in some such law, or in some such rule or regulation, that a local inspector has power to change the specifications drawn by the supervising architect, and made the basis of a contract between the United States and the contractor, we are not at liberty to accept his conduct as evidence of such power. On the contrary, we must, until otherwise informed, treat such conduct as either a usurpation of power, or a violation of his duty—in either case leaving his act as one outside of his authority.

That proposition settled, the rest of this case is readily disposed of; for if the substitution of red oak for white oak was unauthorized—the contract sued upon being an executory contract entered into with reference to the specific contract between defendant in error and the government—there was no proof that tended to show that the failure of plaintiff in error to furnish the red oak entailed any loss or damage upon defendant in error under its obligations to the government; for how can defendant in error be heard to say that its contract to put into the building a white oak finishing is harmed by plaintiff in error's failure to furnish it with red oak for such finishing.

We might stop here, reversing the case in consequence of what has already been said, and sending it back for a new trial; but we think we ought, in view of a new trial, to indicate our opinion upon the issue raised by the special plea, the proof to sustain which, offered by plaintiff in error, was ruled out on the trial below.

The contract of defendant in error with the government, as already stated, was for the finishing of the building in quarter sawed white oak. The building was an important government work, and to finish it in red oak without the consent of the proper officer of the

United States, whether with or without the connivance of any inferior officer, would be a fraud on the government. Now any agreement which is intended to defraud the government, even though it may not amount to a criminal conspiracy, is illegal and void. Woodstock Iron Co. v. Richmond & Danville Extension Co., 129 U. S. 643, 9 Sup. Ct. 402, 32 L. Ed. 819. And if such agreement amount to criminal conspiracy to defraud the United States, all the parties thereto with knowledge, are guilty of an offense punishable with fine and imprisonment. Rev. St. U. S. § 5440 (U. S. Comp. St. 1901, p. 3676). The proof that was submitted, taken in connection with the circumstances, tended directly to show that a fraud upon the government was contemplated, and that plaintiff in error withdrew from its performance of its contract with defendant in error, to avoid becoming a party to such fraud. And the facts, which such proof tended to establish, in our judgment of the law justified plaintiff in error in declining to execute the contract. It is not for us to say that the proof offered was not conclusive, or even convincing. It is enough, that together with the admitted circumstances, it raised a substantial issue of fact—an issue that ought to have been submitted to the jury.

The judgment of the Circuit Court is reversed, and the case remanded with instructions to grant a new trial, and proceed further in accordance with this opinion.